# **EXHIBIT A**

*State Court Pleadings*

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF SUMTER ) | CIVIL ACTION No.:  2017-CP-43-_____ |
| ) | |
| Franklin White, ) | |
| ) | |
| Plaintiff, ) | SUMMONS |
| ) | (Jury Trial Demanded) |
| Vs. ) | |
| ) | |
| EATON Corporation, ) | |
| ) | |
| Defendant. ) | |

**TO THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at her office at Post Office Box 1929, Columbia, South Carolina 29202, within thirty (30) days after the service hereof, exclusive of the day of service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

**BURNETTE SHUTT & MCDANIEL, PA**

By: s/Janet E. Rhodes
Janet E. Rhodes, Esquire (SC Bar #77214)
Post Office Box 1929
Columbia, South Carolina 29202
Telephone: 803-850-0912
Facsimile: 803-904-7910
Email: Jrhodes@burnetteshutt.law
*Attorney for the Plaintiff*

Columbia, South Carolina
September 25, 2017

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP4301762

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF SUMTER ) | FOR THE THIRD JUDICIAL CIRCUIT |
| ) | |
| Franklin White, ) | C/A No.: 2017-CP-43-_____ |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | (Jury Trial Demanded) |
| ) | |
| EATON Corporation, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, complaining of Defendant, herein alleges that:

### PARTIES AND JURISDICTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the Human Affairs Law of the State of South Carolina for sexual harassment and retaliation.

2. At all relevant times, Franklin White ("Plaintiff") was an employee of Defendant EATON Corporation ("Defendant"). Plaintiff is a citizen and resident of the County of Sumter, State of South Carolina.

3. At all relevant times, Defendant is a corporation organized and existing under the laws of Ohio, which does business and has a facility in Sumter County, South Carolina. Defendant is an employer within the meaning of Title VII.

4. Jurisdiction is proper in the County of Sumter, where all the allegations contained herein took place.

1

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP4301762

5. Prior to filing this Civil Action, Plaintiff, filed a Charge of Discrimination, based on sexual harassment, discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff has fully exhausted all of his administrative remedies, and this action is timely filed.

## FACTUAL ALLEGATIONS

7. Plaintiff began working for Defendant on May 22, 2006, as a Senior Production Associate.

8. On or about April 15, 2013, Plaintiff accepted a position on the production line and Yvonne Conyers ("Conyers") became his supervisor.

9. Conyers began to sexually harass Plaintiff soon after she became his supervisor. Without his consent, Conyers rubbed Plaintiff's shoulders or grabbed his arms on multiple occasions. More than once, Conyers wrapped her arms around Plaintiff's waste and whispered things in his ear. Plaintiff told Conyers that the touching was unwarranted and unwanted.

10. Often, Conyers would make comments trying to lure Plaintiff to her home in Columbia. She gave him her personal address and asked him to visit her and indicated that she lived by herself. Conyers would remark she would be home by herself and that Plaintiff had her number.

11. Conyers would often stare at Plaintiff making him feel uncomfortable. She got his personal cell number and texted him outside of work.

2

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP430176

12. For a period, Conyers openly favored the Plaintiff over his co-workers. She asked him if he needed coffee in the mornings, but would not ask his co-workers. Plaintiff believed that Conyers acted this way to make it seem like she and Plaintiff had a personal relationship. Eventually, Plaintiff's wife was even informed of rumors that the Conyers and Plaintiff were having an affair.

13. Upon information and belief, Conyers treated other male subordinates in this manner. She had a reputation for showing favoritism to male employees that she liked who went along with her advances. Upon information and belief, Conyers harassed a former employee in a similar way as Plaintiff, and after that individual made complaints to management, he was later terminated.

14. Plaintiff felt uncomfortable working for Conyers, but also felt threatened that she would retaliate against him if he tried to make complaints about her behavior.

15. In April 2014, Plaintiff attempted to bid out of his position under Conyers to another open position with Defendant. Once Conyers learned that he was trying to bid out of his position, she began to harass him. Conyers then blocked him from getting the bid and made comments to him questioning why he would want to bid out of her department.

16. Shortly thereafter, Conyers began to retaliate against Plaintiff. In June 2014, Conyers unjustifiably wrote Plaintiff up on three (3) different occasions. Prior to June 2014, Plaintiff had no disciplinary actions and had satisfactory performance reviews.

17. Conyers behavior toward Plaintiff changed drastically. Conyers was hostle toward Plaintiff. She followed Plaintiff to the restroom, nit-picked his work, and seemingly stalked him around the building.

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP4301762

18. Plaintiff made complaints to Conyers about the treatment but she responded that "she [could] do what she wants to do." The hostile treatment continued until Plaintiff's termination.

19. Plaintiff complained several times to Karthik Iyer ("Iyer"), Conyers' supervisor. Iyer said that he would have a talk with Conyers, however, the discussion only exacerbated the situation. Conyers told Plaintiff "I see what you're trying to do, and it's not going to work."

20. In September 2014, Plaintiff complained to Cicely (Last Name Unknown) ("Cicely") in Human Resources that he did not feel comfortable working under Conyers. He told Cicely about how Conyers had sexually harassed him, had blocked him from getting jobs, and had retaliated against him for trying to bid out of her department.

21. Cicely told the Plaintiff to follow up with her after 30 days. When Plaintiff went back to HR in October 2014, Plaintiff informed HR that Conyers was stalking him to the bathroom and was heard making comments that she would get Plaintiff fired.

22. During that meeting, Plaintiff was told that he could not be moved from under Conyers because he had write-ups and that he would have to wait until 6 months after his write-ups to be able to bid out of the position. Conyers knew that her write-ups would prevent Plaintiff from leaving and she issued them purposefully.

23. Plaintiff then complained to the plant Manager, Ben Brulie ("Brulie") about Conyers harassment and retaliation. Brulie put Plaintiff out of work for a week saying that he would investigate the situation. Plaintiff gave Brulie a list of witnesses to contact who

4

had seen Conyers' treatment of Plaintiff. Upon information and belief, none of the witnesses were contacted as a part of the investigation.

24. On November 5, 2014, Plaintiff was asked by his former supervisor to return to a job he held previously in another department. Plaintiff was willing to take the previous job because of the unwanted harassment of Conyers. However, Plaintiff was denied the lateral move because of a corrective action initiated by Conyers.

25. When Plaintiff returned from the leave none of his complaints had been addressed. Instead, Plaintiff was placed on a baseless Performance Improvement Plan. Subsequent to the PIP, Conyers failed to have periodic meetings with Plaintiff regarding his progress with the PIP.

26. Plaintiff was terminated on December 17, 2014 for allegedly failing to abide by the PIP. The stated reason was false and pretextual.

27. The real reason for Plaintiff's termination was retaliation for Plaintiff making complaints about sexual harassment, a protected activity.

## FIRST CAUSE OF ACTION
(Title VII: Sexual Harassment)

28. Plaintiff incorporates the allegations in paragraphs 1 through 27 above as fully as if set forth verbatim herein.

29. On numerous occasions, Conyers made inappropriate comments and gestures and touching Plaintiff in inappropriate ways. Plaintiff stated that the comments, gestures, and sexual advancements were unwanted and unwelcomed.

30. The harassment was constant and so severe as to create a hostile work environment. Conyers also made comments to Plaintiff threatening his position if he did

5

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP4301762

not go along with the harassment, which is quid pro quo harassment. Conyers favored the Plaintiff until he made complaints against her.

31. Plaintiff suffered severe emotional distress as a result of sexual harassment.

32. Conyers actions toward Plaintiff were willful, malicious and intentional. Defendant was aware of Conyers prior harassing behaviors and did not take appropriate steps to deter her from continuing to harass other employees.

33. As a direct result and consequence of the sexual harassment, Plaintiff has and will suffer compensatory damages, including emotional distress, mental anguish, and anxiety.

34. As a direct result and consequence, Plaintiff is entitled to compensatory damages, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
(Title VII Retaliation)

35. Plaintiff incorporates the allegations in paragraphs 1 through 34 above as fully as if set forth verbatim herein.

36. Plaintiff reported that he had been sexually harassed by his supervisor, the reporting of which is a protected activity under Title VII.

37. Shortly thereafter, Defendant began to target Plaintiff with write-ups and with an unwarranted PIP that led to his wrongful termination in retaliation for reporting sexual harassment.

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP4301762

38. As a direct result and consequence of said retaliation, Plaintiff has and will suffer economic damages, including back pay, front pay, fringe benefits and has and will suffer compensatory damages, including emotional distress, mental anguish, and anxiety.

39. As a further direct and consequence, Plaintiff is entitled to back pay, reinstatement, front pay, fringe benefits, compensatory damages, punitive damages, interests, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant for back pay, front pay, fringe benefits, interests, compensatory damages, punitive damages, and attorneys' fees and costs in amounts determined by this court and/or the jury.

**BURNETTE SHUTT & MCDANIEL, PA**

By:   s/Janet E. Rhodes
Janet E. Rhodes, Esquire, (77214)
912 Lady Street, 2ND Floor (29201)
Post Office Box 1929
Columbia, South Carolina 29202
Telephone: 803-850-0912
Facsimile: 803-904-7910
Email: Jrhodes@burnetteshutt.law
Attorney for Plaintiff

September 25, 2017
Columbia, South Carolina

7

ELECTRONICALLY FILED - 2017 Sep 25 5:11 PM - SUMTER - COMMON PLEAS - CASE#2017CP430176²